[No. 5899.  Decided December 7, 1905.]

JOHN F. FIRCH et al., *Respondents*, v. ANDREW HACKETT et al., *Appellants*.[1]

ACCOUNTING — CONTRACT TO LOCATE MINING CLAIMS — CONSTRUCTION. Where the defendant made a contract with the plaintiffs to make a certain trip and locate certain coal claims, and share with them equally whatever money or interest he should receive from a contract made with one H, whereby defendant had agreed to locate the claims in the interest of H and himself, and the claims located by the defendant were thereafter rejected and the contract abandoned by H, without fault on the part of the defendant, the plaintiffs are not entitled to any accounting from the defendant as to his interests in the claims located, or other claims or interests acquired in connection with defendant's said trip or subsequent transactions.

1Reported in 82 Pac. 919.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 17, 1905, upon findings in favor of the plaintiffs, after a trial on the merits, in an action for an accounting. Reversed.

*L. H. Prather,* for appellants.

RUDKIN, J.—On the 11th day of June, 1902, the defendant Hackett and one A. D. Hopper entered into the following agreement:

"Whereas, Mr. A. Hackett represents that he possesses information as to the location of coal lands in East Kootenay, close to, and available from line of, the Great Northern Ry., such land being now open to entry or acquirement from the Canadian Government; whereas, A. D. Hopper, representing the Spokane Falls Gas Light Co., is desirous of obtaining such land: It is hereby agreed that Mr. A. Hackett, for and in consideration of one hundred and fifty dollars ($150), the receipt of which is hereby acknowledged, agrees to locate properly and according to law, in such names as said Hopper desires, such sections of coal land in the most available sections of land that is open for entry in said section. Mr. A. D. Hopper hereby agrees to deliver to the said Mr. A. Hackett the sum of one thousand dollars ($1,000), in cash, and one-half interest (forty-nine per cent), in the property or company that may be organized to work and improve the same. The money to be paid at such a time as said A. D. Hopper may legally acquire the title to such locations as may be made in his behalf by said Hackett. He further agrees to advance the necessary license fee of fifty dollars ($50) per section and all necessary government expenses, as also to pay the rental for five years on all the land so located, if such land is not purchased outright.

"In witness whereof we have each signed below as agreeing to the foregoing. Andrew Hackett, A. D. Hopper.

"Witness: John F. Firch."

Immediately thereafter, and on the same day, the defendant Hackett and the plaintiffs Firch and Belden entered into the following agreement:

"We, the undersigned, agree to the following, to wit: That Mr. Andrew Hackett shall go into British Columbia, along the line of the new cut-off of the Great Northern Railroad, to the town of Fernie and coal fields along said railroad, or such other place or places in British Columbia most convenient to above-named railroad, and locate from one to ten sections of good coking coal, properly stake and locate the same in accordance with the laws of British Columbia, and to do all things necessary to properly locate such coal lands for ourselves, and shall also use such other names as may be agreed upon by and between us for the purpose of making a deal with Mr. Albert Hopper, treasurer and superintendent of the Spokane Falls Gas Light Company, or any one else we may choose to make a deal with on all coals located by Mr. Andrew Hackett, or others for him, in British Columbia. It is further agreed that whatever money or interests the said Andrew Hackett shall receive from the said Albert D. Hopper, or said Gas Light Co., he will and shall divide share and share alike with John F. Firch and Worth Belden, on account of the trip upon which he leaves this 11th day of June, 1902. (Signed) Andrew Hackett, John F. Firch, Worth Belden."

Upon the execution of these contracts, the defendant Hackett repaired to the place designated therein, and located sixteen coal claims, containing 640 acres each, in names furnished him and agreed upon by the parties. He returned to the city of Spokane, where the contracts were entered into, and where all the parties resided, on or about the 17th day of July, 1902. In the latter part of July, or the early part of August, 1902, Hopper, accompanied by one Archie Patrick, visited the claims located by the defendant Hackett for the purpose of inspecting the same. Hopper rejected the locations, after such inspection, and soon thereafter left the state and absented himself therefrom for a year and a half. The matter ends here, so far as concerns Hopper and the Spokane Gas Light Company. Thereafter the defendant Hackett made several trips into British Columbia, and located, and assisted in the location of, three groups of claims,

containing 320 claims in all, for which services he is alleged to have received considerable sums in money and stocks, and to have acquired a number of claims or licenses in his own right.

This action was brought by the plaintiffs, against the defendant Hackett and others, for an accounting, the plaintiffs claiming a one-half interest in all moneys and stocks received by the defendant Hackett, and in all claims and licenses held by him, under and by virtue of the contract above set forth. The court below found in favor of the plaintiffs, appointed a receiver to take charge of, receive and collect all moneys due the defendant Hackett, and all claims, licenses, and stocks owned or claimed by him, arising from or growing out of the location of the said several claims, ordered a reference to take an accounting between the parties, and directed a judgment in favor of the plaintiffs, and against the defendant Hackett, for all sums found due on such accounting. From this judgment, the defendants have appealed to this court.

There is little or no controversy between the parties as to the principal facts contained in the foregoing statement, but beyond this, the testimony is in hopeless conflict. The respondents claim that they were possessed of exclusive knowledge as to the location of the coal lands in controversy, prior to the above negotiations. The appellant Hackett, on the contrary, claims that such knowledge was derived from him. The respondent Firch claims that he was a party to the first contract above set forth, though he signed the same as a witness only. His contention in this regard finds no support in the record. The appellant Hackett claims that the respondent Firch received one-half of the $150 paid by Hopper on the execution of said contract. Firch, on the other hand, claims that he received but $20. The respondents claim to have advanced considerable sums of money to the appellant Hackett, on account of said contracts, and the appellant

Hackett claims that no such advancements were made. On this point the testimony is extremely contradictory and unsatisfactory.

But from the view we take of the contract between the parties, their rights are determined by the admitted facts. This is an action for an accounting, and the respondents are only entitled to relief as to such moneys, stocks, claims and licenses, as they and the appellant Hackett have a joint interest in under their contract. The contract upon which the action is based is plain and unambiguous in its terms. Neither fraud nor mistake in its execution is alleged or proved. What, then, are the rights of the respondents under that contract? The contract itself answers this question in the following unmistakable language:

*"It is further agreed that whatever money or interest the said Andrew Hackett shall receive from the said Albert D. Hopper, or said Gas Light Co., he will and shall divide share and share alike with John F. Firch and Worth Belden on account of the trip upon which he leaves this 11th day of June, 1902."*

There is nothing in the contract to indicate that the parties thereto were jointly interested in anything except the Hopper contract. Beyond this, the respondents are not entitled to an accounting, and have no just claim to moneys, stocks, claims or licenses, received by the appellant Hackett from other sources, or from contracts with other parties. If the appellant Hackett failed to perform his contract in other respects, the respondents have their remedy at law in an action for damages, but there is nothing in the contract to warrant the conclusion that the respondents had a joint interest with the appellant in other enterprises or undertakings, aside from the Hopper contract, nor can this court so hold. Inasmuch as the respondents were only interested in the money and stocks involved in the Hopper contract, and under the admitted facts that contract was abandoned with-

out fault on the part of the appellant Hackett, it follows that the judgment of the court below is erroneous, and the same is reversed, with directions to dismiss the action.

MOUNT, C. J., FULLERTON, ROOT, DUNBAR, and HADLEY, JJ., concur.